**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **FRANK A. PIZZOLATO** | **CIVIL ACTION** |
| **VERSUS** | **NO. 13-6528** |
| **FRENCH MARKET CORPORATION** | **DIVISION"C"** |

**ORDER AND REASONS**

This matter comes before the Court on a Motion for Summary Judgment filed by Defendant, French Market Corporation ("FMC"). Rec. Doc. 52. Having considered the parties' memoranda, the record, and the applicable law, the Court GRANTS FMC's Motion for Summary Judgment.

**I. Background**

Plaintiff, Frank A. Pizzolato, a Caucasian, filed this action against FMC seeking damages for racial discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2, *et seq.*, the Louisiana employment discrimination statutes, La. Rev. Stat. § 23:302, *et seq.*, and for reprisal under the Louisiana Whistleblower Statute, La. Rev. Stat § 23:967. Rec. Doc. 1.

FMC is a public benefit corporation that oversees and operates public property owned by the City of New Orleans, including a flea market, farmers market and various commercial buildings in the French Quarter. Rec. Docs. 52-14 & 54-1. It is governed by a twelve-member Board of Directors that is appointed by the Mayor of New Orleans, and includes three New Orleans City Council persons. *Id.* FMC's daily operations and management are conducted by the Executive Director, who reports to the Board of Directors. *Id.*

On January 12, 2011, FMC's Board of Directors voted unanimously to appoint Pizzolato as FMC's Executive Director. Rec. Doc. 52-14.  At that time, the Chairperson was a Caucasian woman, and the Board of Directors included seven other Caucasians, and four African-Americans. *Id.*

Pizzolato claims that in the autumn of 2012, he discovered that Montrel's Bistro, an African-American owned business that was a FMC tenant, had failed to switch its electricity account from FMC's name to its own, as was required by the lease. Rec. Doc. 54-1. Thus, FMC had been paying for Montrel's electricity for five years, which amounted to more than $104,000. *Id.*  Pizzolato claims that he attempted to report this finding at the October 20, 2012, Board of Directors' meeting, but the new Chairperson, Demetric Mercadel, an African-American woman, "interrupted him and told him and told him not to discuss the matter in public and that it should be discussed in executive session." *Id.*  The Board of Directors went into executive session, and Pizzolato claims that two other African-American women on the Board of Directors told him that the Board of Directors "needed to take care of" Montrel's because it was an African-American business. *Id.*  Pizzolato claims that FMC's permitting Montrel's to use utilities paid for by FMC "constitutes theft under Louisiana law and also violates the Louisiana Constitution's prohibition against donating public property/funds." *Id.*  According to Pizzolato, after he informed the Board of Directors about this issue, Mercadel's "demeanor and communications towards [him] shifted" and she "began her efforts to terminate" him. *Id.*

In his Complaint, Pizzolato alleges that he "excelled in his position until he was constructively discharged." Rec. Doc. 1.  Specifically, he alleges that on November 29, 2012, FMC's Board of Directors asked him to resign, and threatened to terminate his employment if he did not comply. *Id.*  Pizzolato alleges that FMC "constructively discharged [him] on or about

2

December 31, 2013 because of his race ([C]aucasian) and also in retaliation for his complaints of workplace act/practices in violation of state law." *Id.* Further, Pizzolato alleges that FMC offered the Executive Director position to an African-American candidate, before hiring his replacement, who was a Caucasian male. *Id.*; *see also* Rec. Doc. 52-1.

FMC filed the instant motion for summary judgment arguing that Pizzolato cannot establish a *prima facie* case of race discrimination under Title VII, or the parallel Louisiana employment discrimination law. Rec. Doc. 52-1. FMC also argues that Pizzolato cannot sustain a case under the Louisiana Whistleblower Statue. *Id.* Pizzolato opposes the motion arguing that there are genuine issues of material fact that preclude summary judgment. Rec. Doc. 54.

## II. Law & Analysis

### A.    Summary Judgment Standard

The court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is material if its resolution could affect the outcome of the action, and a genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2502, 2510, 91 L.Ed.2d 202 (1986); *Wyatt v. Hunt Plywood Co., Inc.*, 297 F.3d 405, 408-09 (5th Cir. 2002). When considering a motion for summary judgment, "the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Deville v. Marcantel*, 567 F.3d 156, 163-64 (5th Cir. 2009). Summary Judgment cannot be defeated by "conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

**B.      Title VII and Louisiana State Law Race Discrimination Claims**

Title VII provides that it is "an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Louisiana Revised Statute § 23:332, similarly provides that it is unlawful employment discrimination for an employer to "[i]ntentionally fail or refuse to hire or to discharge any individual, or otherwise to intentionally discriminate against any individual with respect to his compensation, or his terms, conditions, or privileges of employment, because of the individual's race, color, religion, sex or national origin. La. Rev. Stat. § 23:332(A)(1). Because the laws are substantively similar, jurisprudence interpreting Title VII can be applied in interpreting the Louisiana employment discrimination laws, La. Rev. Stat. § 23:301, *et seq. Brittain v. Family Servs., Inc.*, 801 So.2d 457 (La. Ct. App. 2001).

A plaintiff bringing claims under Title VII can use either direct or circumstantial evidence to prove his case of intentional discrimination. *Portis v. First Nat'l Bank of New Albany, Miss.,* 34 F.3d 325, 328 (5th Cir.1994). Direct evidence is "evidence which, if believed proves the fact of discriminatory animus without inference or presumption." *Sandstad v. CB Richard Ellis, Inc.,* 309 F.3d 893, 897 (5th Cir.2002). "Because direct evidence is rare, a plaintiff ordinarily uses circumstantial evidence to meet the test set out in *McDonnell Douglas.*" *Portis*, 34 F.3d at 328.

In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court of the United States "established an allocation of the burden of

production and an order for the presentation of proof in Title VII discriminatory-treatment cases." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 2746, 125 L.Ed2d 407 (1993). First, the plaintiff must establish a prima facie case of discrimination, which creates a presumption that the employer unlawfully discriminated against the employee. *Tex. Dep't of Cmty. Affirs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). If the plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer to produce evidence of a legitimate, non-discriminatory reason for the adverse employment action. *Buisson v. Bd. of Supervisors of the La. Cmty. and Technical Coll. Sys.*, 592 Fed. Appx. 237, 2014 WL 5804127, at *4 (5th Cir. 11/10/2014) (citing *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007)). "If the employer articulates a legitimate reason for the adverse employment action, 'the plaintiff then bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real discriminatory . . . purpose.'" *Id.* (quoting *McCoy*, 492 F.3d at 556).

To establish a *prima facie* case of race discrimination the plaintiff must demonstrate that he: (1) is a member of a protected group; (2) was qualified for the position at issue; (3) suffered an adverse employment action, such as termination of his employment; and, (4) was replaced with someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group. *Id.* (citing *McCoy*, 492 F.3d at 556).

FMC agreed, for the purposes of its motion for summary judgment, that Pizzolato satisfies the first two prongs. Rec. Doc. 52-1. However, Pizzolato cannot satisfy the third and fourth prongs of the *prima facie* case of race discrimination.

### 1.    Adverse Employment Action

Adverse employment actions include only "ultimate employment decisions such as hiring, firing, demoting, promoting, granting leave, and compensating." *McElroy v. PHM Corp.*, - - - Fed. Appx. - - -, 2015 WL 4758815, at *2 (5th Cir. 8/13/2015) (quoting *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 503 (5th Cir. 2014)). Pizzolato was not fired.  He resigned.  A resignation is actionable under Title VII "only if the resignation qualifies as a constructive discharge." *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001).  "Constructive discharge occurs when an employee has quit [his] job under circumstances that are treated as an involuntary termination of employment." *Haley v. Alliance Compressor LLC*, 391 F.3d 644, 649 (5th Cir. 1004) (citing *Young v. Sw. Sav. & Loan Ass'n*, 509 F.2d 140, 144 (5th Cir. 1975)).  The plaintiff must demonstrate that "a reasonable person in [his] shoes would have felt compelled to resign." *Id.* at 650 (citing *Barrow v. New Orleans S.S. Ass'n*, 10 F.3d 292, 297 n. 19 (5th Cir. 1994)).  In evaluating a claim of constructive discharge, the court considers the following factors, singly or in combination:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger [or less experience/qualified] supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement [or continued employment on terms less favorable than the employee's former status].

*Id.* at 649-50 (quoting *Brown*, 237 F.3d at 566).  Moreover, "[m]ere verbal threats to fire an employee alone do not make working conditions so intolerable that a reasonable employee would feel forced into involuntary resignation." *McElroy*, - - - Fed. Appx. - - -, 2015 WL 4758815, at *2 (citations omitted); *see also Hargray v. City of Hallandale*, 57 F.3d 1560, 1568

(11th Cir. 1995) (stating that "resignations can be voluntary even where the only alternative to resignation is facing possible termination").

Pizzolato has not proved that any of the factors necessary to demonstrate constructive discharge are present. FMC did not demote him, reduce his salary, reduce his job responsibilities, reassign him, badger, harass, or humiliate him, or offer early retirement. In his affidavit, Pizzolato declared that the Board of Directors threatened to fire him if he did not resign, but he did not present any evidence regarding the factors that the Court considers with respect to a claim of constructive discharge. Because verbal threats of termination are insufficient to elevate a resignation to the status of a constructive discharge, Pizzolato has not met his burden of demonstrating that he suffered an adverse employment action.

2.      **Replaced with Someone Outside His Protected Group**[1]

Pizzolato argues that he was replaced with someone outside of his protected group because FMC hired an African-American woman as the interim Executive Director after he resigned, and then offered the job to a different African-American woman, who declined the offer of employment. Rec. Doc. 54. FMC ultimately hired a Caucasian male to permanently replace Pizzolato as the Executive Director. *Id.*

These facts prove that Pizzolato was not replaced with someone outside his protected group. Demonstrating that a temporary replacement was outside of the protected class is insufficient to establish a *prima facie* case of discrimination when the permanent replacement is in the plaintiff's class. *Mercer v. Capitol Mgmt. and Realty, Inc.*, 242 Fed. Appx. 162, 163 (5th Cir. 2007). Further, FMC's allegedly offering employment to someone outside of Pizzolato's class after Pizzolato resigned does not satisfy the forth prong required to demonstrate a *prima*

---

[1] Pizzolato does not allege that he was treated less favorably than similarly situated employees outside the protected group.

*facie* case of race discrimination when Pizzolato's permanent replacement was in his class.[2]

Therefore, Pizzolato has failed to demonstrate a *prima facie* case of race discriminations under

Title VII or the parallel Louisiana law, and FMC's motion for summary judgment is GRANTED

as to these claims.

**C.      Louisiana Whistleblower Statue Claim**

The Louisiana Whistleblower Statute provides in pertinent part:

> A. An employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law:
>
> (1)  Discloses or threatens to disclose a workplace act or practice that is in violation of state law.
>
> (2)  Provides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of law.
>
> (3)  Objects to or refuses to participate in an employment act or practice that is in violation of law.

La. Rev. Stat. § 23:967(A).  Reprisal is defined as "firing, layoff, loss of benefits, or any

discriminatory action the court finds was taken as result of an action by the employee that is

protected" under the statute. *Id.* at § 23:967(C)(1).  To prevail on a claim under this statute, "the

employee must establish that the employer engaged in workplace conduct constituting an actual

violation of state law." *Encalarde v. New Orleans Ctr. for Creative Arts/Riverfront*, 14-2430 (La.

2/13/15); 158 So.3d 826 (citing *Accardo v. La. Servs. & Indem. Co.*, 05–2377 (La. App. 1 Cir.

6/21/06); 943 So.2d 381, 387; *Hale v. Touro Infirmary*, 04–0003 (La. App. 4 Cir. 11/3/04); 886

So.2d 1210, *writ denied*, 05–0103 (La. 3/24/05); 896 So.2d 1036).

---

[2]  In *Jameson v. Arrow Co.*, 75 F.3d 1528, 1532 (11th Cir. 1996), the United States Court of Appeals for the Eleventh Circuit found that in reduction-in-force cases an inference of intentional discrimination may arise when a job for which the plaintiff is qualified, and for which he applied, is available at the time of his termination and the employer offers the job to an individual outside of the protected class.  This precedent is inapplicable because the case at bar is not a reduction-in-force case.

Pizzolato claims he was constructively discharged after "he complained and then publically disclosed that one of FMC's tenants, Montrel's Bistro had committed theft of utility service under La.R.S. 14:67.6 by knowingly using FMC's in excess of $104,000 in electricity for five years, when its lease required Montrel's to pay for the electricity." Rec. Doc. 54. Pizzolato's revealing Montrel's alleged theft of FMC's electricity cannot form the basis of a claim under § 23:967, because the statute requires that the employer, in this case FMC, have engaged in a violation of state law.

Pizzolato alternatively argues that FMC's allowing Montrel's to use its electricity violates the Constitution of Louisiana. Article VII, Section 14 of the Constitution of Louisiana provides that "the funds, credit, property, or things of value of the state or any political subdivision shall not be loaned, pledged or donated to or for any person, association, or corporation." However, this provision is not applicable to public benefit corporations because they are not political subdivisions of the state. La. Rev. Stat. § 1051(F). FMC is a public benefit corporation. *See French Mkt. Vendors Ass'n, Inc. v. French Mkt. Corp.*, 12-0964 (La. App. 4 Cir. 2/13/13); 155 So.3d 514. Therefore, Article VII, Section 14 of the Constitution of Louisiana is inapplicable, and Pizzolato cannot rely on it to support his contention that FMC violated state law. As a result, Pizzolato cannot sustain his claim under the Louisiana Whistleblower Statute, and FMC's motion for summary judgment is GRANTED as to that claim.

Accordingly, IT IS ORDERED that FMC's motion for summary judgment (Rec. Doc. 52) is GRANTED, and Pizzolato's Complaint is DISMISSED WITH PREJUDICE.


New Orleans, Louisiana, this 9th day of September, 2015.


**HELEN G. BERRIGAN**
**UNITED STATES DISTRICT JUDGE**